E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KEITH D. ELLISON (Cal. Bar No. 307070)
Assistant United States Attorney
International Narcotics, Money
 Laundering, and Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6920
     Facsimile: (213) 894-0141
     E-mail:   keith.ellison2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                 FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,          No. CR 09-1175-GW-1

          Plaintiff,               PLEA AGREEMENT FOR DEFENDANT
                                   AUDREY JALBERT
               v.

AUDREY JALBERT,

          Defendant.


     1.   This constitutes the plea agreement between Audrey Jalbert

("defendant") and the United States Attorney's Office for the Central

District of California (the "USAO") in the above-captioned case.

This agreement is limited to the USAO and cannot bind any other

federal, state, local, or foreign prosecuting, enforcement,

administrative, or regulatory authority.

                          DEFENDANT'S OBLIGATIONS

     2.   Defendant agrees to:

          a.   At the earliest opportunity requested by the USAO and

provided by the Court, appear and plead guilty to count seven of the

1    indictment in <u>United States v. Audrey Jalbert, et al.</u>, CR No. 09-

2    1175-GW, which charges defendant with Wire Fraud, in violation 18

3    U.S.C. § 1343.

4                b.   Not contest facts agreed to in this agreement.

5                c.   Abide by all agreements regarding sentencing contained

6    in this agreement.

7                d.   Appear for all court appearances, surrender as ordered

8    for service of sentence, obey all conditions of any bond, and obey

9    any other ongoing court order in this matter.

10               e.   Not commit any crime; however, offenses that would be

11   excluded for sentencing purposes under United States Sentencing

12   Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

13   within the scope of this agreement.

14               f.   Be truthful at all times with the United States

15   Probation and Pretrial Services Office and the Court.

16               g.   Pay the applicable special assessment at or before the

17   time of sentencing unless defendant lacks the ability to pay and

18   prior to sentencing submits a completed financial statement on a form

19   to be provided by the USAO.

20               h.   Not seek the discharge of any restitution obligation,

21   in whole or in part, in any present or future bankruptcy proceeding.

22                          THE USAO'S OBLIGATIONS

23        3.   The USAO agrees to:

24               a.   Not contest facts agreed to in this agreement.

25               b.   Abide by all agreements regarding sentencing contained

26   in this agreement.

27               c.   At the time of sentencing, move to dismiss the

28   remaining counts of the Indictment as against defendant.  Defendant

                                    2

agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.   At the time of sentencing, recommend that the Court apply a six-level downward variance based on the factors set forth in 18 U.S.C. § 3553(a).

f.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 16 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

<u>NATURE OF THE OFFENSE</u>

4.   Defendant understands that for defendant to be guilty of the crime charged in count seven, that is, Wire Fraud, in violation of Title 18, United States Code, Section 1343, the following must be true: (1) defendant knowingly participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

3

(2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

## PENALTIES AND RESTITUTION

5.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1343, is: 20 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The

parties currently believe that the applicable amount of restitution is approximately $1,073,697.97, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.[1]

7.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that

---

[1] This amount is based upon an approximated restitution amount of 1,309,387.77 Canadian dollars converted to U.S. dollars using the average conversion rate for the applicable time period.

unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.   Defendant and her counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including her attorney or the Court, can predict to an absolute certainty the effect of her conviction on her immigration status.  Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

10.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the

underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning on an unknown date and continuing until in or about April 2005, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendant, together with DANIEL IGHEKPE ("IGHEKPE"), SANDRA LATULIPPE ("LATULIPPE"), CORINE NOUNDOU-JUNSI ("NOUNDOU-JUNSI"), CHIKELO SIXTUS EJIKEME ("EJIKEME"), and others (collectively, the "co-conspirators"), knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victims as to material matters, and to obtain money and property from such victims by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.  In the execution of the scheme, defendant and her co-conspirators transmitted and caused the transmission of money by means of wire communication between the United States and Canada.

Defendant and IGHEKPE owned and operated Gold Telecommunications Inc. ("Gold") in Montreal, Quebec, Canada.  Defendant ran and operated a MoneyGram counter inside of Gold.  Using the MoneyGram counter, defendant and her co-conspirators ran schemes through which their victims were fraudulently induced to send money through MoneyGram.  The schemes involved contacting victims in the United States by mail, e-mail, and/or facsimile, and inducing the victims to wire money to defendant and her co-conspirators in Canada via the MoneyGram at Gold.  Numerous victims were located in Los Angeles and Orange Counties, within the Central District of California, and the wires that carried the fraudulently obtained funds from the victims to defendant's MoneyGram account were wired from within, or were routed through, the Central District of California.

One of these schemes involved contacting victims located in the United States and falsely claiming that a foreign company wished to move a large sum of money out of its home country, and required an offshore bank account to accomplish the transfer. Defendant and her co-conspirators falsely and fraudulently told the victims that they would receive a percentage of the funds to be moved in exchange for the use of their bank accounts. Defendant and her co-conspirators fraudulently induced the victims to send money, through MoneyGram and otherwise, to pay for taxes, fees, and other purported expenses, and falsely and fraudulently informed the victims that the victims would not be able to receive the promised payments if they did not send the money as instructed. In many instances, to further the crime, defendant and her co-conspirators would send checks to the victims (which the victims would later learn were fraudulent) and instruct the victims to use the money to assist in paying the purportedly necessary expenses.

Another one of the schemes involved contacting victims located in the United States and falsely claiming that the victims had won a lottery or sweepstakes. Defendant and her co-conspirators falsely and fraudulently told these victims that in order to obtain their winnings, they had to send money, through MoneyGram and otherwise, to pay for taxes, fees, and other purported expenses. Defendant and her co-conspirators fraudulently informed the victims that the victims would not be able to receive the promised winnings if they did not send the money as instructed. In many instances, to further the scheme, defendant and her co-conspirators would send checks to the victims (which the victims would later learn were fraudulent) and

instruct the victims to use the money to assist in paying the purportedly necessary expenses.

In another one of these schemes, one or more of defendant and her co-conspirators would contact victims who had listed costly items, such as automobiles, for sale on the Internet and fraudulently claim that they wanted to purchase the item.  If the contacted victim agreed to a price, the conspirator would send that victim a check for an amount greater than the agreed-upon price, and would falsely and fraudulently claim that the extra money was necessary to pay for licensing, transfer fees, and other purported expenses.  Defendant and her co-conspirators would instruct the victims to deposit the check and send the amount in excess of the agreed-upon purchase price through MoneyGram and otherwise, to a third party who was supposedly within the United States.  Defendant and her co-conspirators falsely and fraudulently informed the victims that the sales could not go through unless victims transferred the excess money as instructed.

In some instances, the mail, e-mail, and facsimiles sent to the victims would instruct the victims to telephone a representative at a given telephone number, which was virtually always outside the United States.  When the victims called the telephone number, defendant and/or her co-conspirators would repeat and elaborate on the false and fraudulent statements, representations and promises made in the mail, e-mail, and facsimiles sent to the victims.

When victims sent funds by MoneyGram, defendant and her co-conspirators would receive the transaction number or other information associated with a transfer of funds initiated by the victims, fraudulently retrieve the funds from the MoneyGram system at

Gold in the form of cash, and use the funds for the enjoyment of defendant and her co-conspirators.

In order to conceal their participation in the conspiracy and scheme to defraud, defendant and her co-conspirators, would complete MoneyGram records with false information to make it appear as if the authorized recipient listed on the MoneyGram transfer had actually retrieved the money from the MoneyGram system.

Through the means described above, defendant and her co-conspirators falsely and fraudulently induced over 300 victims to send at least 1,309,387.77 in Canadian dollars ("CA$"), which defendant and her co-conspirators retrieved from the MoneyGram system at Gold.

In furtherance of the scheme to defraud, on or about November 23, 2004, the co-conspirators induced J.B. to wire $8,820 via MoneyGram from Santa Ana, California, in response to a fraudulent claim the co-conspirators had sent J.B. excess funds for the purchase of a used vehicle that J.B. was selling on the internet.  The co-conspirators directed J.B. to send the excess funds to a "shipper," purportedly to offset shipping, tax charges, and cosmetic repair costs.  That same day, defendant, in Montreal, Quebec, Canada, withdrew from the MoneyGram system CA$10,058.19, which had been sent by wire transfer from J.B. in Santa Ana, California,

<u>SENTENCING FACTORS</u>

11.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the

10

Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss greater than $550,000: | +14 | U.S.S.G. § 2B1.1(b)(1)(H) |
| Offense Involved Ten or More Victims: | +2 | U.S.S.G. § 2B1.1(b)(2)(A)(i) |
| Substantial Part of Conduct Occurred Outside of U.S.: | +2 | U.S.S.G. § 2B1.1(b)(10)(B) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

13. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15. Defendant understands that by pleading guilty, defendant gives up the following rights:

    a. The right to persist in a plea of not guilty.

    b. The right to a speedy and public trial by jury.

11

c.    The right to be represented by counsel -- and if necessary have the court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

16.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that

the statement of facts provided herein is insufficient to support
defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

17.  Defendant agrees that, provided the Court imposes a total
term of imprisonment within or below the range corresponding to an
offense level of 16 and the criminal history category calculated by
the Court, defendant gives up the right to appeal all of the
following: (a) the procedures and calculations used to determine and
impose any portion of the sentence; (b) the term of imprisonment
imposed by the Court; (c) the fine imposed by the court, provided it
is within the statutory maximum; (d) to the extent permitted by law,
the constitutionality or legality of defendant's sentence, provided
it is within the statutory maximum; (e) the amount and terms of any
restitution order, provided it requires payment of no more than
$1,073,697.97; (f) the term of probation or supervised release
imposed by the Court, provided it is within the statutory maximum;
and (g) any of the following conditions of probation or supervised
release imposed by the Court: the conditions set forth in Second
Amended General Order 20-04 of this Court; the drug testing
conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the
alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

18.  The USAO agrees that, provided (a) all portions of the
sentence are at or below the statutory maximum specified above and
(b) the Court imposes a sentence within or above the range
corresponding to an offense level of 16 and the criminal history
category calculated by the Court, the USAO gives up its right to
appeal any portion of the sentence, with the exception that the USAO

reserves the right to appeal the amount of restitution ordered if that amount is less than $1,073,697.97.

## WAIVER OF COLLATERAL ATTACK

19.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

20.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent

14

1    that such defenses existed as of the date of defendant's signing this
2    agreement.

3    RESULT OF VACATUR, REVERSAL OR SET-ASIDE

4        21.  Defendant agrees that if the count of conviction is
5    vacated, reversed, or set aside, both the USAO and defendant will be
6    released from all their obligations under this agreement.

7    EFFECTIVE DATE OF AGREEMENT

8        22.  This agreement is effective upon signature and execution of
9    all required certifications by defendant, defendant's counsel, and an
10    Assistant United States Attorney.

11    BREACH OF AGREEMENT

12        23.  Defendant agrees that if defendant, at any time after the
13    signature of this agreement and execution of all required
14    certifications by defendant, defendant's counsel, and an Assistant
15    United States Attorney, knowingly violates or fails to perform any of
16    defendant's obligations under this agreement ("a breach"), the USAO
17    may declare this agreement breached.  All of defendant's obligations
18    are material, a single breach of this agreement is sufficient for the
19    USAO to declare a breach, and defendant shall not be deemed to have
20    cured a breach without the express agreement of the USAO in writing.
21    If the USAO declares this agreement breached, and the Court finds
22    such a breach to have occurred, then: (a) if defendant has previously
23    entered a guilty plea pursuant to this agreement, defendant will not
24    be able to withdraw the guilty plea, and (b) the USAO will be
25    relieved of all its obligations under this agreement.

26        24.  Following the Court's finding of a knowing breach of this
27    agreement by defendant, should the USAO choose to pursue any charge

28

that was either dismissed or not filed as a result of this agreement, then:

      a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

      b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

      c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

25.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

26.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

27.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

1  NO ADDITIONAL AGREEMENTS

2  28.  Defendant understands that, except as set forth herein,

3  there are no promises, understandings, or agreements between the USAO

4  and defendant or defendant's attorney, and that no additional

5  promise, understanding, or agreement may be entered into unless in a

6  writing signed by all parties or on the record in court.

7  PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

8  29.  The parties agree that this agreement will be considered

9  part of the record of defendant's guilty plea hearing as if the

10  entire agreement had been read into the record of the proceeding.

11  AGREED AND ACCEPTED

12  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
13  CALIFORNIA

14  E. MARTIN ESTRADA
   United States Attorney

15

16                                              12/5/2022
                                                Date
17  KEITH D. ELLISON
   Assistant United States Attorney

18                                              12/5/22.
                                                Date
19  AUDREY JALBERT
   Defendant

20                                              12/5/22
   ANTHONY M. SOLIS                             Date
21  Attorney for Defendant
   AUDREY JALBERT

22

23

24

25

26

27

28

18

1                    CERTIFICATION OF DEFENDANT

2        I have read this agreement in its entirety.  I have had enough

3   time to review and consider this agreement, and I have carefully and

4   thoroughly discussed every part of it with my attorney.  I understand

5   the terms of this agreement, and I voluntarily agree to those terms.

6   I have discussed the evidence with my attorney, and my attorney has

7   advised me of my rights, of possible pretrial motions that might be

8   filed, of possible defenses that might be asserted either prior to or

9   at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10  of relevant Sentencing Guidelines provisions, and of the consequences

11  of entering into this agreement.  No promises, inducements, or

12  representations of any kind have been made to me other than those

13  contained in this agreement.  No one has threatened or forced me in

14  any way to enter into this agreement.  I am satisfied with the

15  representation of my attorney in this matter, and I am pleading

16  guilty because I am guilty of the charges and wish to take advantage

17  of the promises set forth in this agreement, and not for any other

18  reason.

19

20  AUBREY JALBERT                              5 december, 22
    Defendant                               Date

21

22

23

24

25

26

27

28
                                19

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Audrey Jalbert's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is informed and voluntary; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

ANTHONY M. SOLIS
Attorney for Defendant
AUDREY JALBERT

Date 12/5/22

20